IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WESLEY EARL MASSOTH,              §
TDCJ #1176823,                    §
                                  §
              Petitioner,         §
                                  §
v.                                §          CIVIL ACTION NO. H-09-0186
                                  §          consolidated with H-09-0355
RICK THALER, Director,            §
Texas Department of Criminal Justice - §
Correctional Institutions Division, §
                                  §
              Respondent.[1]      §

## MEMORANDUM AND ORDER

Texas inmate Wesley Earl Massoth (TDCJ #1176823) has filed a federal habeas corpus petition under 28 U.S.C. § 2254, seeking relief from a state court felony conviction. Massoth has provided a memorandum in support of his petition. [Doc. # 7]. The respondent has answered with a motion for summary judgment, arguing that Massoth is not entitled to relief. [Doc. # 13]. Massoth has filed a reply. [Doc. # 15]. After considering all of the pleadings, the state court records, and the applicable law, this Court **grants** the respondent's motion for summary judgment and **dismisses** this case for reasons set forth below.

---

[1]      The petition names Nathaniel Quarterman as the respondent. Rick Thaler has replaced Quarterman as Director of the Texas Department of Criminal Justice - Correctional Institutions Division. Therefore, the Court substitutes Thaler as the proper respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

Massoth, who is incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), seeks habeas corpus relief in federal court from a felony conviction entered against him in state court.  Massoth was charged in two separate indictments (Cause Nos. 917686 & 917687) with aggravated sexual assault of a child.  At a joint trial on both indictments, the state presented evidence showing that Massoth had been sexually assaulting the victim, who was his own daughter, since the age of 5.  The Court adopts the following summary of the facts based on the evidence presented at trial:

Lori married Wesley Massoth, . . . and the couple had one child, a daughter named Jane[2] who was born in 1985.  Lori was approximately five-feet five-inches tall and weighed 130 pounds.  She also had cerebral palsy and was a slow learner.  At the time of trial, Jane was eighteen years old and approximately the same height as her mother.  [Jane's father, Wesley Massoth,][3] was approximately six feet tall.

Jane was required to cook and clean when her mother did not feel like it.  She did not have many friends because [her father] required her to stay around the house to help out with chores.  In fact, her life away from school was completely regimented; she had to submit to the demands of her father.  She was also not allowed to cry and was not allowed to say, "I love you."  She was also forced to live on peanut butter and bread for months at a time.

Jane was sexually abused by her parents on a regular basis for twelve years before she finally told her grandparents what was happening.  Her earliest memory was Labor Day when she was five years old and in

---

[2]      The complainant's name has been changed to "Jane" to protect her privacy because she was a minor when the sexual abuse occurred.

[3]      Both of the complainant's parents (Wesley Massoth and Lori Massoth) were charged with aggravated sexual assault in connection with the allegations outlined herein.  Unless otherwise indicated, any reference to "Massoth" or to the complainant's "father" shall refer to the petitioner, Wesley Massoth, for purposes of this order.

kindergarten.  It was a school day for Jane, but [her father] told her to stay home from school saying that if he did not have to go into work then she should not have to go to school.  During that day, [Wesley Massoth] and Lori took their own daughter into their bedroom, took her clothes off, and held her down.  [Massoth] then put Vaseline on his penis and penetrated Jane's anus with it.  Jane cried because it hurt so much.

When the assault was over, Jane took a bath.  [Massoth] told her that he was sorry and that he loved her.  The assaults then occurred approximately once per month after that.  As Jane got older, the assaults became more frequent, happening once each week before [Massoth] was arrested.  Jane would fight back by kicking and screaming, but [Massoth] and Lori would hold her down and put a pillow over her face.  [Massoth] would typically ejaculate inside Jane's anus.  Sometimes Jane's mother would merely watch and masturbate.  Other times, mother and daughter would laying each other's arms while [Massoth] assaulted Jane.  All three would be naked during such assaults.

When Jane was in the second grade, her parents moved to an apartment in Harris County.  When she turned ten or eleven years old, [Wesley Massoth] started having vaginal intercourse with her.  During those assaults, [Massoth] would typically ejaculate on Jane's chest.  He also started using condoms.  Every once in a while, [Massoth] would make Jane perform oral sex on him and he would ejaculate on her face.  Sometimes, [Massoth] would require Jane to perform oral sex on her mother.

On one occasion, while the family was living in Humble and Jane was thirteen or fourteen years old, [Massoth] called Jane into his bedroom.  He told her to take off her clothes and then he started anally penetrating her.  [Massoth] then stated, "Okay.  We are going to switch now."  Jane did not want to switch because vaginal intercourse was still painful for her, so she started crying and screaming.  [Massoth] penetrated her vagina, and Jane screamed, "I wish I were dead."  [Massoth] then slapped her across the face and said, "Don't you ever say that again."  [Massoth] then stopped the assault and walked away.

Approximately seventy-five percent of the time, Jane's mother would participate in the assaults.  Sometimes [Massoth] would make both Lori and Jane remove their clothing, tell them to lie in certain positions, and take turns penetrating them.  The last sexual assault occurred as late as March 2002.

[Massoth] would show Jane the knives and guns that he kept around the house.  He told Jane not to tell anyone what was happening and that if she did tell someone, she would "probably end up dead."  Sometimes Jane would tell her mother, "I just wish this would all stop," but her mother merely replied, "I know."

Jane's aunt [Dedra Massoth][4] heard rumors and gossip about Jane's family for many years.  She saw inappropriate behavior.  For example, when Jane was fifteen or sixteen years old and after her breasts developed, [Wesley Massoth] untied the top of her bikini.  However, the aunt never saw anything serious enough to approach authorities.

In May 2002, Jane and her aunt were at a McDonald's when the aunt asked her, "Is there anything going on?"  And, "Is he — is your dad hitting you or anything sexual?"  Jane then started to cry but did not tell her aunt the details.  Her aunt called her that night and said, "You have one of two choices: Either you tell your grandparents on Friday or I'll tell them for you."  Jane then told her grandparents what was happening and her grandparents called the authorities.

Detective James Fitzgerald, of the Harris County Sheriff's Department, was working at the Children's Assessment Center on June 3, 2002, when Jane arrived to report the abuse.  Fitzgerald and a nurse interviewed Jane concerning the assaults.  Jane also underwent a sexual assault exam, which indicated significant injury to the hymen and penetrating trauma.  The notches in Jane's hymen were an indication of more than three episodes of assault.  Jane also endured a rectal exam, which revealed no trauma.  However, the tissues of the anus heal very rapidly.  In fact, fifty to seventy-five percent of people with history of anal penetration show no injury.  Furthermore, child cases involving anal penetration tend to show less traumatic injury.

The next day [June 4, 2002], Jane's parents came into the center.  Detective Fitzgerald told [Wesley Massoth] about the allegations, and [he] denied them.  [Massoth] said that Jane was upset because her grades were poor and because [Massoth] had threatened to take back her pickup truck.

---

[4]     Dedra Massoth, who testified as one of the outcry witnesses, was married to Wesley Massoth's younger brother Kenneth Massoth, who was deceased at the time of trial.

[Doc. # 13, Respondent's Motion for Summary Judgment, at 5-8] (footnotes added).  After hearing all of the evidence, a jury in the 208th District Court of Harris County, Texas, found Wesley Massoth guilty of aggravated sexual assault of a child as alleged in both indictments. Massoth testified on his own behalf during the punishment phase of the trial, which also featured testimony from Massoth's younger sister and one his younger brothers.  Both of Massoth's siblings testified that he had sexually abused them multiple times when they were young children.  Massoth admitted the abuse and he conceded that the complainant's allegations were true.  Although Massoth expressed remorse and asked for leniency, the jury sentenced Massoth to life imprisonment in each cause number.  The trial court granted the state's motion to stack those sentences so that they would run consecutively.[5]

Massoth filed a direct appeal, arguing that he had been denied effective assistance of counsel and that the trial court erred by imposing consecutive life sentences.  Massoth also challenged his conviction by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.  On October 13, 2003, the Texas Court of Criminal Appeals dismissed Massoth's habeas corpus applications because his direct appeal was still pending.  *See Ex parte Massoth*, Nos. 56,964-01 & 56,964-02.  Thereafter, an intermediate state court of appeals rejected all of Massoth's issues in an unpublished opinion.  *See Massoth v. State*, Nos. 14-03-00605-CR & 14-03-00606-CR, 2004 WL 1381027 (Tex. App.

---

[5]   Lori Massoth, who was Massoth's co-defendant and the complainant's mother, was also convicted of aggravated sexual assault of a child.  She entered a guilty plea in exchange for a twenty-year prison sentence.

— Houston [14th Dist.] June 22, 2004).  In that decision, the state court of appeals summarily disposed of his claims of ineffective assistance, noting that Massoth failed to show that, but for any alleged deficiency, there was "a reasonable likelihood that any part of the proceeding might have reached a different outcome." *Id.*, 2004 WL 1381027 at *1.  The court of appeals also found that the sentences were appropriately stacked under Texas law. *See id.*

After his direct appeal was decided, Massoth did not file a timely petition for discretionary review.   Massoth sought habeas corpus relief under Article 11.07 arguing, among other things, that his appellate attorney had failed to advise him of his right to file a petition for discretionary review.  The Texas Court of Criminal Appeals granted relief on this claim, but declined review of his remaining arguments.  *See Ex parte Massoth*, Nos. 56,964-03 & 56,964-04.  As a result, Massoth was awarded an out-of-time petition for discretionary review.  *See Ex parte Massoth*, Nos. AP 75,215 & 75,216 (Tex. Crim. App. July 27, 2005). In that petition, Massoth did not challenge the appellate court's decision to affirm his stacked life sentences.  The only claim that Massoth presented in his petition for discretionary review was a general allegation that he was denied effective assistance of counsel at trial.  The Texas Court of Criminal Appeals refused Massoth's out-of-time petition for discretionary review on January 25, 2006.

After the conclusion of his direct review, Massoth challenged his conviction again by filing another state habeas corpus proceeding.  In that application, Massoth argued that he was entitled to relief from both of his aggravated sexual assault convictions because (1) his

6

trial attorney failed to investigate or consult with him about potential defenses and gave misleading advice; (2) the trial court abused its discretion by failing to consider his motion to dismiss counsel or advise him of his right to proceed *pro se*; and (3) the trial court abused its discretion and demonstrated bias against the defense by holding an *ex parte* meeting with the complainant before trial.  The state habeas corpus court, which also presided over Massoth's trial, entered detailed findings of fact and concluded that Massoth was not entitled to relief. The Texas Court of Criminal Appeals agreed and denied relief on October 22, 2008, without a written order, based on the trial court's findings.  *See Ex parte Massoth*, No. 56,964-05 & 56,964-06.

Massoth now seeks a federal writ of habeas corpus to challenge both of his state court convictions under 28 U.S.C. § 2254.[6]  Massoth contends that he was denied effective assistance of counsel at his trial because his attorney: (1) failed to thoroughly investigate his case; (2) failed to request a psychological expert to examine Massoth and a medical expert to examine the physical evidence; (3) provided erroneous and misleading advice on clear points of law; (4) failed to consult about potential defenses; and (5) displayed animosity towards Massoth in his affidavit to the state habeas corpus court.  Massoth also complains that he was denied effective assistance of counsel on appeal because his attorney failed to raise "significant and obvious issues."  In several related claims, Massoth complains that the

---

[6]     As in state court, Massoth filed two separate but nearly identical petitions to challenge each of the convictions in cause numbers 917686 and 917687.  As a result, the instant case has been consolidated with another proceeding filed by Massoth so that both petitions can be considered together. *See Massoth v. Quarterman*, Civil Action No. H-09-355 (S.D. Tex).

trial court abused its discretion by: (1) failing to consider his motion to dismiss counsel or give him the option to proceed *pro se*; (2) by holding an *ex parte* meeting with the complainant before trial; (3) by holding a bail hearing while Massoth was without counsel; and (4) refusing to provide him with his own copy of the trial transcript.  Finally, in two other related issues, Massoth complains that his stacked sentences violate Texas law and the United States Constitution under the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  The respondent has filed a motion for summary judgment, arguing that most of Massoth's claims are procedurally barred and he is not otherwise entitled to federal habeas corpus relief.  The parties' contentions are addressed below under the applicable federal habeas corpus standard of review.

## II.    STANDARD OF REVIEW

The respondent's motion for summary judgment must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002); *see also Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted).  As the Supreme Court has explained, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d),

set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

The federal habeas corpus scheme of review requires petitioners for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  *See* 28 U.S.C. § 2254(b).  "To satisfy the exhaustion requirement, the petitioner must fairly present the substance of his federal claim to the highest state court." *Ries v. Quarterman*, 522 F.3d 517, 523 (5th Cir. 2008).  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state-law ground.  *Cone v. Bell*, — U.S. —, 129 S. Ct. 1769, 1780 (2009) (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first instance.  *See Cone*, — U.S. —, 129 S. Ct. at 1780 (noting that, "[w]hen a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the

first instance' and frustrates the State's ability to honor his constitutional rights") (quoting *Coleman*, 501 U.S. at 732).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA standard provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009).  A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.  The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)), *cert. denied*, — U.S. —, 130 S. Ct. 367 (2009).

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 7 (2002).  Likewise, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law.  *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

A state court's findings and conclusions are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Bunion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, — U.S. —, 129 S. Ct. 1306 (2009).  A state court's findings of fact are presumed to be correct on federal habeas review, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Pointing to the petition and memorandum, neither of which make reference to the federal habeas corpus standard of review, the respondent argues that this action should be dismissed outright because Massoth has made no effort to meet his burden to show that he

is entitled to relief.  It is true that petitioner bears the burden of showing that he is entitled to relief under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002). Nevertheless, the Court must address the claims in this case under the liberal construction accorded to *pro se* pleadings.  *See Haines v. Kerner*, 404 U.S. 519 (1972).

## III.   DISCUSSION

### A.   Doctrine of Procedural Default — Unexhausted Claims

The respondent observes that many of Massoth's claims are unexhausted because he failed to properly present them for an adjudication on the merits by the state's highest court of criminal jurisdiction as required by the federal habeas corpus statutes.  *See* 28 U.S.C. § 2254(b).  The record confirms that Massoth did not present the following claims in his petition for discretionary review or his state habeas corpus application before the Texas Court of Criminal Appeals:  (1) trial counsel was deficient for failing to request expert assistance; (2) trial counsel displayed animosity towards Massoth; (3) the trial court abused its discretion by failing to assure that Massoth had the assistance of counsel during a bail-reduction hearing; (4) the trial court abused its discretion by refusing to provide Massoth with his own copy of the trial transcript; (5) appellate counsel was deficient for failing to raise "significant and obvious issues" on direct appeal;[7] and (6) the trial court erred by

---

[7]    In one of his state habeas proceedings, Massoth successfully argued that his appellate counsel was deficient for failing to advise him of the right to file a *pro se* petition for discretionary review.  *See Ex parte Massoth*, Nos. 56,964-03 & 56,964-04.  As a result, Massoth was awarded an out-of-time petition for discretionary review.  The Texas Court of
(continued...)

12

stacking his life sentences under Texas law and the United States Constitution.[8]  Because Massoth failed to raise these claims properly before the Texas Court of Criminal Appeals, the respondent maintains that these unexhausted claims are barred  by the doctrine of procedural default.  The respondent's argument is addressed below, beginning with a brief overview of the exhaustion requirement found in the federal habeas corpus statutes.

### 1. Exhaustion of State Court Remedies

Under the applicable federal habeas corpus statutes, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).  Thus, a petitioner "must exhaust all

---

[7](...continued)
Criminal Appeals did not consider any other claims of ineffective assistance concerning Massoth's appellate counsel in that proceeding, however, and Massoth did not present any such claims in his subsequent state writ applications.  *See Ex parte Massoth*, Nos. 56,964-05 & 56,964-06.  Accordingly, Massoth's claim that his appellate counsel failed to present "significant issues" on direct appeal is unexhausted.  It is also without merit.  In that regard, Massoth does not allege any facts showing that appellate counsel was objectively unreasonable in failing to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Likewise, Massoth fails to establish actual prejudice because he does not demonstrate a "reasonable probability" that, but for his counsel's deficient performance, "he would have prevailed on his appeal."  *Id.*

[8]    Massoth presented two related claims on direct appeal concerning the trial court's decision to stack the sentence.  The court of appeals rejected those claims.  *See Massoth v. State*, Nos. 14-03-00605-CR & 14-03-00606-CR (Tex. App. — Houston [14th Dist.] June 22, 2004) (unpublished).  Although Massoth obtained leave to pursue an out-of-time petition for discretionary review, he did not raise any challenge to his stacked sentence in that proceeding.  Because Massoth deprived the Texas Court of Criminal Appeals of the opportunity to consider whether his sentences were properly stacked, his challenge to the sentence is unexhausted.  Massoth further fails to show that his claims have any merit or that his stacked sentence violates the constitution in this instance.

13

available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). The exhaustion requirement "is not jurisdictional, but reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Moore v. Quarterman*, 454 F.3d 484, 490-91 (5th Cir. 2006) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (internal citations and quotations omitted)). Exceptions exist only where there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1)(B).

To exhaust his state remedies under the applicable statutory framework, a habeas petitioner must fairly present "the substance of his claim to the state courts." *Moore*, 454 F.3d at 491 (quoting *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986)). In Texas, a criminal defendant may challenge a conviction by taking the following paths: (1) the defendant may file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; and/or (2) he may file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(c). Thus, by direct appeal or collateral review, consideration by the Texas Court of Criminal Appeals is required to satisfy the exhaustion requirement. *See Busby v. Dretke*, 359 F.3d 708, 723 (5th Cir. 2004)

("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

Massoth has filed a response to the summary judgment motion in this case. [Doc. # 15]. He does not dispute that he failed to properly exhaust available state court remedies with respect to the above-referenced claims. Thus, as the respondent correctly notes, Massoth's failure to exhaust his state court remedies results in a procedural default for reasons outlined further below.

### 2.    Procedural Default

It is well established that "[i]f a petitioner fails to exhaust state remedies, but the court to which he would be required to return to meet the exhaustion requirement would now find the claim procedurally barred, then there has been a procedural default for purposes of federal habeas corpus relief." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citing *Coleman*, 501 U.S. at 735 n.1, and *Sones*, 61 F.3d at 416). Massoth could have, but did not, raise his unexhausted claims previously on direct appeal or in his state habeas corpus application. As the record reflects, Massoth has filed more than one state habeas corpus application and he has already received leave to file one out-of-time petition for discretionary review. At this point, it is likely that a successive state habeas petition would be barred by the Texas abuse-of-the-writ statute. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a). The Fifth Circuit has recognized that, under these circumstances, this failure to exhaust qualifies as a default based on an adequate state procedural ground which, in turn, bars

federal habeas review. *Finley*, 243 F.3d at 220 (citing *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995)).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Massoth does not demonstrate that the fundamental-miscarriage-of-justice exception applies in this case.[9] Accordingly, federal habeas corpus review of the merits of his defaulted claims depends on whether he can establish both cause and actual prejudice for his failure to present his claims properly on state habeas corpus review.

The Supreme Court has explained that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Examples of external impediments include active government interference or the reasonable unavailability of the

---

[9]   A fundamental miscarriage of justice may be found if the petitioner can show that he is actually innocent of the crime of which he was convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). A petitioner who claims that he is actually innocent of the underlying crime must show that, based on "new reliable evidence" not presented at trial by reason of a constitutional violation, it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. *See House v. Bell*, 547 U.S. 518, 536-37 (2006) (following *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). This "demanding" standard permits review only in the "'extraordinary'" case. *House*, 547 U.S. at 538 ) (quoting *Schlup*, 513 U.S. at 494). Massoth does not attempt to meet this standard.

factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).  Actual prejudice requires a showing that, based on the success of the underlying defaulted claim, the result of the proceeding would somehow have been different. *See Barrientes v. Johnson*, 221 F.3d 741, 769 (5th Cir. 2000) (citation omitted).

In this case, Massoth appears to blame his appellate counsel for failing to raise at least some of his unexhausted claims on direct appeal.  Ineffective assistance of counsel can constitute cause for a procedural default in certain circumstances. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488-89).  Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Constitution. *Id*.  In other words, ineffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim. *Id.*  The substance of Massoth's ineffective-assistance allegation against his appellate attorney was not presented on state habeas corpus review.  In fact, Massoth concedes in his federal petition that his ineffective-assistance claim (concerning his appellate attorney's "failure to present significant issues") is new.  [Doc. # 1, at 8, ¶ 22].  An ineffective-assistance claim "must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at 452 (quoting *Carrier*, 478 U.S. at 489).  Stated another way, "the claim of ineffective assistance of counsel on direct appeal is an independent constitutional violation, which must itself be exhausted using state collateral review procedures." *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009) (citing *Edwards*, 529 U.S. at 451-53)), *cert. denied*, — U.S. —, 2010 WL

17

250906 (Jan. 25, 2010). Because Massoth did not exhaust his ineffective-appellate-counsel argument, it is procedurally barred from review in this Court and cannot furnish the basis for cause and prejudice enabling federal review of the underlying unexhausted habeas claims. *See Hatten*, 570 F.3d at 605.

Massoth offers no explanation for his failure to present his unexhausted claims properly on state habeas review.  Massoth alleges no other facts showing that cause exists to excuse his default.  To the extent that Massoth represents himself in this matter, it is well established that neither indigence nor *pro se* status constitutes cause for a petitioner's procedural default.  *See, e.g., McCowin v. Scott*, 67 F.3d 100, 102 (5th Cir. 1995) (recognizing that a petitioner's *pro se* status is not an objective external factor which qualifies as cause for failure to raise a claim) (citing *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992)).  Massoth points to no other objective factor external to his defense which prevented his compliance with state procedure.  Likewise, a liberal review of the pleadings does not reflect that actual prejudice will result from an application of the procedural bar. The Court concludes therefore that Massoth's unexhausted claims are barred from federal habeas corpus review by the doctrine of procedural default.  The respondent is entitled to summary judgment on this issue.

### B.   Trial Court Error

In addition to the unexhausted claims set forth above, Massoth alleges that he is entitled to relief because the trial court abused its discretion by committing the following errors:  (1) the trial court failed to rule on his *pro se* motion to dismiss his court-appointed

18

defense counsel or to advise him of his right to self-representation; and (2) the trial court held an improper *ex parte* meeting with the complainant.  The respondent argues that these claims concerning the trial court are barred from federal habeas corpus review because the last state court to consider these allegations rejected them for procedural reasons.  In that regard, the state habeas corpus court found that these claims were barred from review because Massoth failed to present these record-based allegations of trial court error on direct appeal.  *See Ex parte Massoth*, Nos. 56,964-05 & 56,964-06 at 61 (citing *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. on reh'g)).

As noted above, it is well established that a procedural default occurs when the last state court to consider a claim expressly rejects that claim pursuant to an independent and adequate state procedural rule.  *Cone*, — U.S. —, 129 S. Ct. at 1780;  *Coleman*, 501 U.S. at 729-30.  "To be adequate, a state rule must be 'firmly established and regularly followed.'" *Wright v. Quarterman*, 470 F.3d 581, 586 (5th Cir. 2006) (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (citations omitted)).  The Fifth Circuit has recognized that, since at least 1998, the same procedural default rule relied upon by the state habeas corpus court in Massoth's case has been firmly established for purposes of barring a claim from federal habeas review.  *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004) (holding that the rule in *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), which was modified on motion for rehearing on February 2, 1998, was "firmly entrenched" as a procedural default rule on that date); *see also Bartee v. Quarterman*, 574 F. Supp. 2d 624, 668 (W.D. Tex. 2008) (holding that claims barred in state court by the "firmly entrenched" rule in *Ex parte*

*Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) were also defaulted on federal habeas review). Thus, this rule is sufficient to bar federal review.

It is the petitioner's burden to show that the "independent and adequate" state procedural rule at issue is not firmly established and regularly followed, or that it was capriciously applied under the circumstances. *Wright*, 470 F.3d at 586 (citations omitted). Massoth makes no attempt to meet that burden here. For reasons discussed previously, Massoth further fails to establish that any exception to the doctrine of procedural default applies. Accordingly, the above-referenced claims of trial court error are barred from federal habeas corpus review by the doctrine of procedural default.

More importantly, even if not barred, the Court notes that the state habeas corpus court rejected Massoth's allegations of trial court error for alternative reasons after finding that the claims had no merit. After considering an affidavit from Massoth's trial attorney, the state habeas corpus court found that Massoth "never informed his trail counsel that he (a) had filed a *pro se* motion to dismiss court-appointed counsel or (b) wanted to represent himself during trial." *Ex parte Massoth*, Nos. 56,964-05 & 56,964-06 at 61. The state habeas corpus court further found that Massoth failed to take steps to present any such motion before the court:

> Since [Massoth] neither urged his *pro se* motion to dismiss [his] court-appointed attorney nor informed the trial court about any desire to represent himself, then the trial court was never made aware that [Massoth] purportedly wanted to relieve trial counsel of his responsibilities of representing [Massoth] in trial or to exercise his *Faretta* right to self-representation.

*Id.* In addition, the state habeas corpus court found that Massoth's allegation of an improper *ex parte* meeting with the victim was completely untrue, noting that "[t]he trial judge never met with the complainant outside the presence of [Massoth] or his trial counsel." *Id.*

It is well established that a state court's factual determinations "shall be presumed to be correct," and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Westbrook v. Thaler*, 585 F.3d 245, 251 (5th Cir. 2009). The Fifth Circuit has recognized that the presumption of correctness found in § 2254(e)(1) is especially strong where, as here, the trial court and the state habeas court are one and the same. *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996) (citing *May v. Collins*, 955 F.2d 299, 314the (5th Cir. 1992)). Massoth does not meet his burden to rebut the state court's findings here. This Court's own review shows that the findings of fact are supported by the state court record. Massoth does not otherwise establish that the trial court had notice of his desire to proceed without counsel at trial or that it held an *ex parte* meeting with the complainant. Because Massoth fails to show that the state court's decision to reject these claims was objectively unreasonable, the respondent is entitled to summary judgment on these issues.

## C. Ineffective Assistance of Counsel at Trial

Apart from those claims that are unexhausted and procedurally barred, Massoth complains that his trial counsel was constitutionally ineffective for the following reasons: (1) he failed to conduct a thorough investigation; (2) he gave erroneous or misleading advice;

and (3) he failed to consult with Massoth about potential defensive strategies. These claims were considered at length and rejected on state habeas corpus review. The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the right to have the assistance of counsel at trial. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). The right to counsel guaranteed by the Sixth Amendment includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Claims for ineffective assistance of counsel are analyzed under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See id*. at 687-88. To demonstrate deficient performance on his counsel's part, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. That is, the

22

defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient to prevail under *Strickland*. Once a petitioner establishes error by his defense counsel, then he must still demonstrate actual prejudice as a result of his counsel's deficient performance. Performance is prejudicial only if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id*. Massoth's allegations of deficient performance are addressed separately below, along with the state court's findings.

### 1.    Failure to Investigate

Massoth alleges in his petition that his counsel was deficient because he "failed to investigate the case." [Doc. # 1, at 7]. In his supporting memorandum, Massoth complains his counsel did not file any motions for pretrial discovery or interview his family members. [Doc. # 7, at 8]. Massoth alleges further that his counsel should have, but did not, investigate Nurse Ellen Taft, who participated in the complainant's sexual assault examination at the Children's Assessment Center. [*Id.* at 9].

The state habeas corpus court found that Massoth's appointed counsel attempted to interview Massoth's wife and co-defendant, Lori Massoth, but her trial attorney "refused to allow such interview." *Ex parte Massoth*, No. 56,964-05 & 56,964-06 at 61. Trial counsel

23

also interviewed Massoth's siblings, only to discover that Massoth had previously sexually abused them as well.[10]  *Id.*  Trial counsel interviewed Massoth's former sister-in-law, Dedra Massoth, who was one of the state's outcry witnesses, to discover the circumstances surrounding the complainant's initial report of sexual abuse.  *Id.*   Trial counsel also interviewed Massoth, who told him that the complainant's allegations were false and made up because he had "disciplined her after she went without permission to the Kappa Beach Party in Galveston."  *Id.* at 62.  In addition, Massoth reportedly told trial counsel that the allegations against him were false and that the outcry witness, Dedra Massoth, was conspiring with the complainant in order to get "revenge" against him for accusing her of causing his brother's death.  *Id.*  The state habeas corpus court found that trial counsel investigated the complainant's criminal history and discovered that she was on probation and had criminal charges pending against her in two separate counties, although these offenses were unavailable for purposes of impeachment for purposes of Rule 609 of the Texas Rules of Evidence.  *Id.*  With regard to Massoth's allegations about Nurse Taft, the state court found that trial counsel had no reason to challenge the credibility of the Nurse Taft, her physical examinations, or her medical opinions.  *Id.*   Based on these findings, which are presumed correct, the state habeas corpus court concluded that trial counsel "conducted

---

[10]     Massoth's sister testified during the punishment phase that he sexually abused her for 6 or 7 years, from the time she was 5 years-of-age until she turned 11 or 12, when Massoth left home to join the Navy. *See Court Reporter's Record*, vol. 5, at 12-17. Massoth's youngest brother testified that Massoth sexually abused him as a child as well and that he sodomized him on one occasion, after Massoth returned from the Navy.  *See Court Reporter's Record*, vol. 6, at 7-10.

sufficient factual investigation but was only able to locate a small amount of beneficial evidence to present on [Massoth's] behalf." *Id.* Massoth does not show otherwise and he has offered nothing of substance to refute the state court's findings.[11]

A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)). Massoth makes no such showing here. The record reflects that Massoth testified during the punishment phase of the trial. During that testimony, Massoth admitted that he repeatedly raped his own daughter, that he started sodomizing her on a regular basis when she was five, that he eventually started having vaginal sex with her when she was eleven or twelve, and that she cried during these episodes because it hurt. *See Court Reporter's Record*, vol. 6, at 19, 27-30. Massoth also admitted sexually abusing his younger sister and raping his youngest brother. *See id.* at 17-19. Massoth does not allege facts showing what else his attorney could have done to investigate his case. Likewise, in light of his trial testimony, he

---

[11]     Counsel stated in his affidavit that, based on his recollection, Massoth had been discharged dishonorably from the Navy and that his service records showed that Massoth had "sexual relations with another male during his military stint[.]"  *Ex parte Massoth*, No. 56,964-05 & 56,964-06 at 55.  Massoth disputes this and presents proof that, in contrast to a comment made by his counsel in his state court affidavit, he was granted an "honorable" discharge from the Navy.  [Doc. # 7, Exhibit].  While this evidence may show that counsel was mistaken about Massoth's separation of service, it is irrelevant for purposes of establishing deficient performance or actual prejudice.  In that respect, the record shows that Massoth told the jury that he was discharged from the Navy because his ears were damaged and not for any dishonorable reason.  *See Court Reporter's Record*, vol. 7, at 15.

fails to suggest how any additional investigation would have changed the result of the trial.[12]

Based on this record, Massoth fails to show that his counsel was deficient, or that he suffered

any actual prejudice, as the result of any failure to investigate.   Accordingly, Massoth fails

to show that the state court's decision to reject these claims was objectively unreasonable.

### 2.    Giving Erroneous and Misleading Advice

Massoth alleges that his counsel was deficient because he "gave erroneous and

misleading advice on Clear [sic] point's [sic] of Law."  [Doc. # 1, at 7].  However, neither

the petition nor the supporting memorandum provide any specific facts in support of this

claim.  [Doc. # 1, at 7; Doc. # 7, at 8-12].   The respondent maintains, therefore, that

Massoth's allegation is conclusory and that it fails to state a valid claim.

It is well established that conclusory allegations of ineffectiveness are insufficient to

demonstrate deficient performance or actual prejudice.  *See Day v. Quarterman*, 566 F.3d

527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir.

1992) (denying habeas relief where petitioner "offered nothing more than the conclusory

allegations in his pleadings" to support claim that counsel was ineffective for failing to

---

[12]     In his response to the summary judgment motion, Massoth reveals for the first time his belief
that the complainant had been having sex with her boyfriend and that she had been pregnant
but had an abortion the year before his arrest.  [Doc. # 15, at 4].  Massoth theorizes that the
outcry witness, Dedra Massoth, learned of this and forced the complainant to lodge the false
charges against him so that the complainant's grandfather would not "cut her off" from
receiving his monetary assistance. [*Id.* at 4-6].  Massoth concedes, however, that he withheld
this information because he has been unable to "find the name of the clinic that did the
abortion." [Doc. # 15, at 6].  These allegations, which are presented for the first time on
federal habeas corpus review, were not raised in state court and are unexhausted.  They are
also speculative, unsubstantiated, and insufficient to raise a genuine issue of material fact.

investigate and present evidence).  The Fifth Circuit has held repeatedly that a petitioner's bare allegations are insufficient to state a claim on habeas corpus review and do not warrant relief.  *See, e.g.*, *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)), *cert. denied*, 537 U.S. 1084 (2002); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that the petitioner's conclusory allegations failed to establish a valid ineffective assistance of counsel claim).  Because Massoth has failed to offer any specific facts in support of this allegation, he fails to state a valid claim for relief and the respondent is entitled to summary judgment on this issue.

### 3.      Failure to Consult

Massoth alleges that his counsel was deficient because he failed to consult with him about potential defensive strategies.  [Doc. # 1, at 7].  In support, Massoth contends that his counsel only visited with him "through the glass of a group holding tank with an average of 15 to 20 other defendants present on the holding tank."  [Doc. # 7, at 11].  Massoth complains that, "considering the nature of the case," this was an insufficient opportunity to discuss trial strategy. [*Id.*].  Massoth adds that, after meeting with him once before Christmas, his counsel did not speak with him again until one week before jury selection, which commenced in May of 2003.  [*Id.*].

Massoth appears to claim that counsel's overall trial strategy was deficient because his attorney failed to adequately consult with him.  In response to Massoth's allegations, defense counsel provided a lengthy and detailed affidavit to the state habeas corpus court. *Ex parte Massoth*, No. 56,964-05 & 56,964-06 at 54-58.  In this affidavit, defense counsel explained that he had "multiple conversations" with Massoth in an effort to investigate and prepare for trial.  *Id.* at 55. As counsel reports, his investigation disclosed "a lot of fairly unsavory information" about Massoth, including the fact that he sexually abused his younger sister and brother.  *Id.* at 54.  With little mitigating evidence in Massoth's favor, counsel elected to follow a strategy that would hopefully result in leniency from the jury at sentencing:

> During trial, I did not present any witnesses in the guilt stage.  In preparing for trial, Mr. Massoth and I agreed that the best strategy, in light of the State's evidence, was to not contest Mr. Massoth's guilt for sexually assaulting the complainant.  This decision was based, at least in part, upon Mr. Massoth's wife testifying against him that both Mr. Massoth and his wife sexually assaulted the complainant together.  However, our agreed strategy was to try to convince the jury to give a sentence on the lower end of the punishment range.  Based upon this plan, Mr. Massoth testified during the punishment phase that he had been sexually abused by his father and that he was in great need of some treatment to address his sexual issues.  While I conceded that probation was not appropriate in this case, I suggested to the jury that the appropriate punishment fell within 10 to 15 years in prison.

*Id.* at 57-58.  Trial counsel stated that he knew Massoth would "admit to committing all of the sexual abuses of the complainant and his siblings[.]"  *Id*. at 58.  Counsel emphasized, however, that Massoth also expressed remorse, testifying that he "had apologized and made amends" in order to seek mercy from the jury.  *Id.*  According to defense counsel, Massoth

agreed "that this was the best method of possibly securing the least amount of punishment from the jury." *Id.*

The state habeas corpus court rejected Massoth's claim, noting that trial counsel's strategy was to present Massoth's testimony during the punishment stage "in a manner that admitted to and apologized for committing the sexual abuses of the complainant and his siblings" and would attempt to mitigate the sentence by explaining to the jury that Massoth "had been sexually abused by his father" as well and was in need of treatment. *Ex parte Massoth*, No. 56,964-05 & 56,964-06 at 62. Based on the detailed affidavit provided by defense counsel, the state habeas corpus court found that counsel "sufficiently consulted with [Massoth] in order to conduct factual investigation, to plan trial strategy, and [to] prepare for trial." *Id.* at 63.  The state court concluded further that "[t]he totality of the representation afforded [Massoth] was sufficient to protect his right to reasonably effective assistance of counsel." *Id.*

Counsel's decision to seek leniency from the jury during the punishment phase by expressing remorse and asking for treatment is a strategic decision.  Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight").  A federal habeas corpus court may not find ineffective assistance of counsel merely because it disagrees with counsel's chosen trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999).  It is well established in this

circuit that "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997); *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983) (citing *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1975); *Daniels v. Maggio*, 669 F.2d 1075 (5th Cir. 1982)).

The trial transcript reflects that Massoth's counsel subjected the state's case to meaningful adversarial testing while carefully questioning the state's witnesses. He also presented a thoughtful argument for leniency in spite of the unfavorable facts and the overwhelming evidence of Massoth's guilt. It is undisputed that Massoth agreed with counsel's proposed strategy and he does not suggest what else his counsel could have done on his behalf. Under these circumstances, Massoth fails to show that a concession strategy constitutes deficient performance. *See Haynes v. Cain*, 298 F.3d 375, 383 (5th Cir. 2002) (en banc); *see also Florida v. Nixon*, 543 U.S. 175 (2004) (rejecting a claim of ineffective assistance in a capital case where defense counsel strategically chose to concede guilt during trial in an attempt to mitigate the potential punishment). Massoth likewise fails to show that counsel's strategy was so ill chosen that it rendered the entire trial fundamentally unfair.

Based on this record, Massoth fails to demonstrate deficient performance or actual prejudice. Likewise, he does not show that the state court's decision to reject his claim was objectively unreasonable. Because Massoth has failed to demonstrate a valid claim for relief under the governing standard of review, the respondent is entitled to summary judgment and the petition will be dismissed.

## IV.   CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## V.    CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.    The respondent's motion for summary judgment [Doc. # 13] is **GRANTED**.

2.    The petition for a writ of habeas corpus [Doc. # 1] is **DENIED**, and this case is **DISMISSED** with prejudice.

3.    A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>February 17th</u>, 2010.

Nancy F. Atlas
United States District Judge